# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No 21-0583V

| | |
|---|---|
| HOLLY HAVIS, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: November 1, 2024 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Elizabeth Martin Muldowney, Sands Anderson PC, Richmond, VA*, *for Petitioner.*

*Benjamin Patrick Warder, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On February 12, 2021, Holly Havis filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, following her receipt of an influenza ("flu") vaccine on October 4, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. After Respondent conceded entitlement,

---

[1] Because this ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

the parties were unable to informally resolve damages, and submitted that subject for my resolution.[3]

**For the following reasons, I find that Petitioner is entitled to compensation in the form of a lump sum payment of $76,382.13 (representing $75,000.00 for actual pain and suffering, plus $1,382.13 for actual unreimbursable expenses).**

## I. Authority

In another recent decision, I reviewed the legal standard to be considered in determining damages, and how to properly evaluate prior SIRVA compensation determinations within SPU. I fully adopt and hereby incorporate my prior discussion in Section II of *Yodowitz v. Sec'y of Health & Hum. Servs.*, No. 21-370V, 2024 WL 4284926, at *12-22 (Fed. Cl. Spec. Mstr. Aug. 23, 2024).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

## II. Pain and Suffering

### A. The Parties' Arguments

In seeking $135,000.00 for her past pain and suffering, Petitioner notes that her left-sided SIRVA featured pain ratings of 4 – 9/10, plus reduced range of motion ("ROM"); an assessment of adhesive capsulitis; and required treatment with Tramadol, Lidoderm patches, and a platelet-rich plasma ("PRP") injection, while also resulting in an MRI

---

[3] Respondent conceded entitlement of Petitioner's left SIRVA in a Rule 4(c) Report (ECF No. 34) and I accordingly issued a corresponding Ruling (ECF No. 35) in July 2022. The parties' efforts to informally resolve damages hit an impasse in April 2023, *see* Status Report (ECF No. 53). They subsequently briefed damages. Petitioner's Motion for a Ruling on the Record on Damages filed Aug. 16, 2023 (ECF No. 61) (hereinafter "Brief"), Respondent's Response filed October 23, 2023 (ECF No. 63); Petitioner's Reply filed Nov. 21, 2023 (ECF No. 65). The matter is now ripe for adjudication.

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

visualizing tendinopathy, bursitis, partial tearing, and a SLAP lesion. She was evaluated by urgent care, primary care, and orthopedic providers, and attended seven physical therapy ("PT") sessions. Brief at 15 – 16. Petitioner contends that her SIRVA persisted until at least early 2021. Brief at 16 and Reply at 5 (internal citations omitted); *see also* Reply at 4 ("the evidence is clear that Petitioner suffered with pain and dysfunction for at least 15 months").

Petitioner also contends that "while treating for" her left SIRVA, she overly relied upon, and thereby injured, her *right* arm. Brief at 9; *see also id.* at 16; Reply at 3 – 4. Her primary care physician ("PCP") endorsed a connection between the two injuries, and she therefore argues that the right-sided injury (with a treatment course including formal PT and surgical intervention) should be factored into her SIRVA damage award. Brief at 16; Reply at 3 – 4. Petitioner further states that that "while she was seeking treatment for" her left SIRVA, she was unable to perform and teach music (her means of generating income). Reply at 3. Therefore, those activities could not have caused her right-sided injury. *Id.* Overall, Petitioner contends that her pain and suffering was similar – but greater than – what was established in *Leslie* and *Cooper*. *Id.* at 19 – 20.[5]

Respondent proffers a lesser award of $50,000.00, based on his view that Petitioner's left SIRVA was treated "conservative[ly]," with a course ending in August 2020. Response at 19 and n. 3. Respondent also disputes any connection to the subsequently-documented right arm injury. *Id.* at 14 – 18, citing *Osenbach v. Sec'y of Health & Hum. Servs.*, No. 16-0419V, 2023 WL 5714809, at *3 (Fed. Cl. Spec. Mstr. Aug. 8, 2023) ("It is axiomatically the case in the Program that not all post-vaccination injuries are vaccine-caused"). He contends that *Leslie* and *Cooper* are factually "inapposite" (without elaboration), and instead, that *Ramos* and *Merwitz* are "more instructive" to the pain and suffering valuation. *Id.* at 20.[6]

### B. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult, with no impairments to her mental faculties or capacity. I therefore analyze principally the severity and duration of Petitioner's injury. In

---

[5] *Leslie v. Sec'y of Health & Hum. Servs.*, No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) (awarding $125,000.00 for past pain and suffering); *Cooper v. Sec'y of Health & Hum. Servs.*, No. 16-1387V, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) ($110,000.00).

[6] *Merwitz v. Sec'y of Health & Hum. Servs.*, No. 20-1141V, 2022 WL 17820768 (Fed. Cl. Spec. Mstr. Nov. 14, 2022) (awarding $50,000.00 for past pain and suffering); *Ramos v. Sec'y of Health & Hum. Servs.*, No. 18-1005V, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021) ($40,000.00).

performing this analysis, I have reviewed the record as a whole, including all medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I also have taken into account prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and I rely upon my experience adjudicating these cases. However, I base my ultimate determination on the specific circumstances here.

A thorough review of the evidence reveals that Ms. Havis received the at-issue flu vaccine in her left deltoid during a primary care encounter on October 4, 2019. Ex. 11 at 19 – 25. She was then 62 years old, and her medical history included chronic fatigue, insomnia, migraine headaches, and short-term memory issues. *Id.* at 21, 23 – 24; *see also, e.g.*, Ex. 3 at 6. She also had a several-decade history of low back pain, for which she was prescribed Tramadol 50mg in August 2019. Ex. 12 at 27 – 30.

Petitioner developed left shoulder pain within 48 hours post-vaccination (a required fact in any Table SIRVA claim). Fourteen (14) days post-vaccination, on October 18, 2019, at an urgent care, she reported persistent "sore[ness]," was observed to have an injection site "lump" and tenderness to palpation, and she agreed to try managing the pain with ice and ibuprofen. Ex. 14 at 2 – 6. Three subsequent medical encounters documented ongoing pain, plus objectively reduced range of motion – but no formal treatment measures. Ex. 10 at 101 – 111; Ex. 12 at 12 – 17;[7] Ex. 11 at 14– 19. A January 14, 2020, MRI suggested bursitis, tendinopathy, partial tearing, degenerative changes, and a SLAP lesion. Ex. 15 at 16.

On February 4, 2020, the PCP documented Petitioner's ongoing left shoulder injury which was causing "persistent functional limitations… She is unable to play her piano which is causing financial difficulties, as she teaches piano lessons now for a living." Ex. 11 at 12. The PCP's exam found "tenderness over the left shoulder/ deltoid and elbow. Patient only able to raise the L arm about 10 – 15 degrees due to shoulder pain. Only able to flex the elbow to 90 degrees. No crepitus, swelling, or other deformity." *Id.*

The first orthopedist who evaluated Petitioner's shoulder, in mid-February 2020, dismissed her concerns that her injury could have been caused by a vaccination. Ex. 15 at 3 – 5. She promptly established care with a different orthopedics practice, where she was documented to have a pain rating of 6/10 despite "doubling up" the dose of Tramadol (prescribed for her preexisting back issues) and applying Lidoderm patches. Ex. 16 at 7 – 14. Then in March 2020, she received a PRP injection. *Id.* at 9 - 10.

---

[7] Petitioner notes that at this December 17, 2019, pain management encounter, she reported taking "Tramadol 50 mg 1 – 2 PO TID, which was working well for her pain overall." Ex. 12 at 12; *see also* Brief at 14. But she was taking the same amount of Tramadol three months earlier (pre-vaccination) for her chronic low back pain. Ex. 12 at 17.

Between April 2 – May 14, 2020, Petitioner attended seven formal PT sessions. *See generally* Ex. 7 at 103 – 116. She initially rated her pain as currently/ at best 2/10, but at worst 9/10 (associated with lying on her left side, and activity such as playing instruments). *Id.* at 105. She was instructed on a home exercise program ("HEP") and also encouraged to "return to instrument play in order to help rehab potential/ progression. *Id.* at 113. The last PT record summarizes Petitioner had achieved "steady improvement" over time, with good active ROM (150 degrees flexion, 90 degrees abduction), external rotation strength of 4+/5, but general weakness. *Id.* at 117. Petitioner was told to continue a "narrowed" HEP, and return for additional formal PT as needed. *Id.*

At a June 2, 2020, orthopedics follow-up, Petitioner reported "some functional limitations in the use of her [left] arm," and that "certain arm movements" resulted in 2/10 pain of 2/10, but she was not taking any pain medication. Ex. 16 at 5. She reported "decent progress" with formal PT, but discontinued because "the expense is too great." *Id.* at 6.[8] The orthopedist exhorted Petitioner to continue her HEP, and to consider periodic reevaluations with the physical therapist "to help with accountability." *Id.* PT was "the single best thing [Petitioner] can do to help return to her normal activities of playing the piano and bass without pain." *Id.* At the final orthopedics follow-up on August 6, 2020 (conducted via telemedicine), Petitioner demonstrated "full painless elevation and external rotation… waving her arm above her head without pain!" Ex. 22 at 6. She also reported "doing pushups several times a week without issues." *Id.* Petitioner and the orthopedist were "quite pleased with how well her [left] shoulder was doing" – but she would continue "strengthening her RTC [rotator cuff] and upper body in general," utilize conservative pain measures, and follow up as needed. *Id.*

Petitioner never thereafter received medical attention for her left shoulder,[9] despite numerous encounters for other concerns[10] - even eight months later, when she began seeking medical attention for a new right-sided injury (eventually necessitating over 25 PT sessions, electrodiagnostic studies, and cubital tunnel release surgery). But those records are insufficient to relate back to the prior SIRVA. For instance, on April 30, 2021, when first reporting her right-sided injury, Petitioner described "having to sleep on her

---

[8] Petitioner has documented paying $20.00 out of pocket for each formal PT session. Ex. 32 at 1.

[9] It is also noted that the February 4, 2020, PCP encounter's physical examination, history of present illness, and assessment of the left shoulder appears to have been carried forward within the electronic medical records to subsequent dates in 2020 and 2021.*Compare* Ex. 11 at 8 – 14; *id.* at 2 – 8; Ex. 23 at 2 – 8. Accordingly, these PCP records are not strong evidence of the ongoing condition of Petitioner's left shoulder.

[10] *See, e.g.*, Ex. 23 at 2 (chief complaint of more frequent migraines); *id.* at 16 (abdominal pain and skin problem/ rash); *id.* at 24 (short-term memory concerns); Ex. 34 at 19, 15, 9, 3 (organized chronologically) (chronic low back pain).

right side over the last year due to issues that she has been noting [in?] left arm" – but there is no new examination, assessment, or plan supporting an *ongoing* left-sided injury. Ex. 23 at 32. And at the April 2021 encounter, Petitioner simultaneously mentioned "regular fairly heavy use of the arm playing piano and bass" – which both suggests that her left arm was functional by that point,[11] and a potential unrelated cause for her new right-sided injury. *See also, e.g.*, Ex. 22 at 9 – 12, 26 - 30 (May and July 2021 orthopedics evaluations of right shoulder pain "start[ing] *about three weeks ago*… from sleeping on her right side more," with no reference to the left shoulder) (emphasis added); *id.* at 23 – 25 (May 2021 PT initial evaluation for right shoulder); Ex. 38 at 4 (February 2022 PT reevaluation for right shoulder, at which Petitioner referenced "playing music and teaching"); Ex. 43 at 2 (October 2022 orthopedics reevaluation for right shoulder, "also mention[ing] previous left shoulder problems and that is doing fine now without any issues").[12]

I recognize that in November 2022, Petitioner's PCP recorded that her right arm injury was "probably due to overuse from her previous left arm/ shoulder issue. Had no right arm issues previously." Ex. 42 at 17. But that note long post-dates the events in question, did not result in any new treatment for either shoulder, and was potentially written at Petitioner's behest. Ex. 42 at 11 (reflecting that Petitioner was "here to have previous note amended"); *see also* Response at 16 – 17 (arguing that by November 2022, the parties were engaged in damages discussions, and Respondent had conveyed a proffer that did not incorporate the right-sided injury). Therefore, it does not constitute a reliable or persuasive medical opinion linking the two complaints.

Overall, Petitioner may sincerely *believe* that her SIRVA resulted in injury to her opposite arm – but there is not preponderant evidence to support that conclusion. *See Meagher v. Sec'y of Health & Hum. Servs.*, No. 18-1572V, 2023 WL 8713607, at *12 (Fed. Cl. Spec. Mstr. Nov. 17, 2023), citing *James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (explaining that "lay opinions as to causation or medical diagnosis may be properly categorized as mere 'subjective belief' when the witness is not competent to testify on those subjects").[13]

---

[11] *See also* Ex. 2 at 2 (fact witness's affidavit completed in January 2021, stating that Petitioner had an ongoing left shoulder injury, but had resumed practicing bass 45 minutes at a time, as well as household tasks such as opening jars, using a can opener, and chopping vegetables).

[12] At best, the medical record evidence supports that Petitioner began sleeping on her right side after developing her SIRVA, and she continued sleeping on her right side long-term after the SIRVA substantially improved (perhaps out of habit). The medical records contain much less support for her allegation of long-term overreliance on her right side – or that any such behaviors caused the right-sided injury.

[13] This case is also similar to others lacking preponderant evidence that a SIRVA in one arm caused subsequent injury to the other. *See,* e.g., *Richardson v. Sec'y of Health & Hum. Servs.*, No. 20-674V, 2023

Therefore, the permissible damages award should only seek to provide recompense for Petitioner's right SIRVA – which involved a prompt initial evaluation (14 days post-vaccination) and some high pain ratings and moderately reduced ROM. But the SIRVA was nevertheless treated conservatively (with temporary increased use of her preexisting Tramadol prescription, and other more conservative pain measures, one PRP injection, seven formal PT sessions followed by a HEP, PCP and orthopedics evaluations, and an MRI). In fact, Petitioner's injury had substantially improved by ten months post-vaccination. Any lingering symptoms are not documented. The medical records, plus Petitioner and one witness's affidavits, also support that the SIRVA significantly impacted her ability to perform and teach music *during* that acute ten-month timeframe, but not later.

Turning to the case law, I agree with Petitioner that her initial course was similar to what claimants in *Leslie* and *Cooper* experienced. However, those petitioners established more significant residual effects,[14] thereby justifying the past pain and suffering awards of above $100,000.00 (unusual for SIRVAs not involving surgical intervention). Ms. Havis has not done the same. Respondent's citations to *Ramos* and *Merwitz* (resulting in pain and suffering awards of $40 – 50,000.00) are also not instructive, however – since Ms. Havis sought medical attention much sooner (14 days post-vaccination, compared to 91 days in *Merwitz* and 121 days in *Ramos*), had higher pain ratings and documented functional limitations, and demonstrated personal impacts (in particular, her inability to perform or teach music during her active treatment course).

Overall, I find that Petitioner's initially-moderate injury and disruption to her occupation, balanced against a relatively conservative course of treatment and substantial recovery by 10 months post-vaccination, warrants **a past pain and suffering award of $75,000.00.**

---

WL 6180813, at *7 (Fed. Cl. Spec. Mstr. Aug. 16, 2023) (finding that the SIRVA's surgical intervention was successful, and the opposing arm's injury was most likely due to age and/or unrelated aggravating factors); *Green v. Sec'y of Health & Hum. Servs.*, No. 20-378V, 2023 WL 6444421, at *2 – 3 (Fed. Cl. Spec. Mstr. Sept. 1, 2023) (noting an over 10-month gap between the two complaints). These stand in contrast to Petitioner's cited case, *McDorman*, which involved a much closer temporal link. *McDorman v. Sec'y of Health & Hum. Servs.*, No. 19-814V, 2021 WL 5504698, at *3 (Fed. Cl. Spec. Mstr. Oct. 18, 2021) (noting that Petitioner was still in post-operative PT for her SIRVA, when pain in the opposing shoulder was first documented).

[14] *Cooper*, 2018 WL 6288181, at *12 (accepting that the petitioner "continued to experience residual pain and reduced range of motion through the date of the hearing… approximately two years and nine months following [her]] injurious vaccination"); *Leslie*, 2021 WL 837138, at *10 – 11 (noting that the SIRVA included uncommon features of bone erosion and possible infection, and its residual symptoms continued for approximately three years post-vaccination).

### III. Actual Unreimbursable Expenses

Compensation shall also include "actual unreimbursable expenses" which: "(i) resulted from the vaccine-related injury for which the petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary." Section 15(a)(1)(B).

Petitioner requested reimbursement of $2,728.58 for medical expenses and associated mileage. She helpfully included subtotals relating to her left SIRVA versus the subsequent right-sided injury (which I have not accepted, as discussed above). Brief at 13 – 14 and n. 1; *see also* Brief – Attachment 1 (spreadsheet); Exs. 28 – 33, 44, 52 (billing records). Respondent stipulates to the reimbursement of expenses for the left SIRVA. Response at 22.

In calculating reimbursement for the mileage driven to those medical appointments, however, Respondent requests application of the IRS's medical mileage rate. Response at 22. But Respondent does not actually defend that position – and Petitioner has correctly utilized the higher business mileage rate, *see* Brief – Attachment 1; Reply at 8 – 9, which I have consistently found to be more appropriate. *See, e.g.*, *Perez v. Sec'y of Health & Hum. Servs.*, No. 21-746V, 2024 WL 3030395, at *1 (Fed. Cl. Spec. Mstr. May 17, 2024); *Walter v. Sec'y of Health & Hum. Servs.*, No. 21-1461V, 2024 WL 1299576, at *4 – 5 (Fed. Cl. Spec. Mstr. Feb. 27, 2024); *Tappendorf v. Sec'y of Health & Hum. Servs.*, No. 20-1592V, 2024 WL 1299566, at *4 – 5 (Fed. Cl. Spec. Mstr. Feb. 23, 2024). **Accordingly, I will award $1,382.13 for reimbursement of actual unreimbursable expenses.**

### Conclusion

Based on the record as a whole and the parties' arguments, I award Petitioner a lump sum payment of **$76,382.13 (representing $75,000.00 for actual pain and suffering, and $1,382.13 for actual unreimbursable expenses).** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[15]

---

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master